UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL WILLIAM MAGIDSON, <br> Petitioner, <br> v. <br> KATHLEEN ALLISON, <br> Respondent. | Case No. 10-CV-05118-EJD <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** <br><br> Re: Dkt. No. 1 |

Petitioner Michael Magidson, represented by counsel, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction from Alameda County Superior Court. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

**PROCEDURAL HISTORY**

On April 1, 2003, an information was filed, charging Petitioner, and codefendants Jose Merel and Jason Cazares, with first degree murder. Pet. at 2. A jury trial began on March 15, 2004 and ended in a mistrial on June 22, 2004 when the jury was unable to reach a verdict. Id.

In 2005, a second jury trial began, and Petitioner and Merel were ultimately convicted of second degree murder. Id. The jury found not true the hate crime allegation. Id. The jury did not reach a verdict as to Cazares. Id.[1] The state trial court sentenced Petitioner to a term of fifteen

---

[1] Cazares subsequently pleaded no contest to voluntary manslaughter. Id.

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

1

years to life in state prison. Id.

On May 12, 2009, the state appellate court affirmed the judgment. Resp. Ex. 6. On August 19, 2009, the California Supreme Court denied review. Resp. Ex. 8.

Petitioner filed the instant petition for a writ of habeas corpus on November 12, 2010.

## DISCUSSION

A. <u>Factual Background</u>

The following facts are summarized from the opinion of the California Court of Appeal. Resp. Ex. 6. The defendants—Petitioner, Merel, and Cazares—along with Jaron Chase Nabors,[2] were friends who had discussed the possibility that Lida Araujo, the 17–year old victim, was a man. The victim was described as being pretty, flirtatious, and often acted in a sexually suggestive manner. During the summer of 2002, the victim began hanging out at Merel's house with Petitioner, Merel, Cazares, and Nabors. A few weeks before the victim's death, Petitioner and Merel had engaged in oral and anal sex with the victim.

One night, in October 2002, Petitioner, Merel, Cazares, and Nabors went to a bar to have drinks. They returned to Merel's house around 1:30 a.m. On the way to the house, they talked about whether the victim would be at Merel's house, and someone suggested that if she was, they could ask her if she was a man or a woman. The victim was at Merel's house when they all arrived, and at some point during the night, Merel confronted the victim, asking her if she was a man or a woman. The victim attempted to evade the question. Eventually, the group discovered that the victim was anatomically male.

After the discovery, Petitioner attempted to choke the victim several times, and would not allow her to leave the house. Merel struck the victim on the top of her head with a can of food. Merel also hit the victim in the head with a frying pan, at which point the victim fell to the floor.

---

[2] Nabors was initially charged with murder and a hate crime allegation; however, pursuant to a plea agreement, he pleaded guilty to voluntary manslaughter in exchange for his testimony against defendants. Resp. Ex. 6 at 1 n.1.

Cazares and Nabors left the house to get shovels. When they returned, the victim had blood on her face, but was alive and sitting on a couch. After some encouragement from Cazares and Nabors, Petitioner hit the victim twice in the face with a closed fist. After she dropped to the floor, he kneed her twice in the face with a great deal of force. Petitioner used a rope to tie the victim's wrists and ankles, and she was placed on a blanket. She appeared to be unconscious. Petitioner, Nabors, and Cazares carried the victim to the garage. Merel remained in the living room to scrub the blood off the carpet. At some point, Petitioner, Merel, Cazares, and Nabors got into a truck, found an area off an unpaved road, and dug a hole. When they finished digging, Petitioner dragged the victim's body out of the truck and into the grave. All four men filled the grave with rocks and dirt.

At trial, an expert testified that the cause of death was asphyxia due to strangulation, associated with blunt trauma to the head. There were two lacerations on Lida's upper forehead, with hemorrhaging inside the scalp. The blows were caused by a hard, blunt object.

B. <u>Standard of Review</u>

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be consulted to determine whether the circuit "has already held that the particular point in issue is clearly established by Supreme Court precedent," circuit precedent cannot "refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Instead, a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803–04 (1991). When there is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion. See id. at 805.[3]

---

[3] The outcome in this case will not be affected by the Supreme Court's grant of certiorari and forthcoming decision in Wilson v. Sellers, 137 S. Ct. 1203 (2017). In this case, neither party disputes that this Court should review the opinion of the California Court of Appeal. Moreover, this Court need not consider hypothetical reasons supporting the California Court of Appeal's

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY
4

The Supreme Court has vigorously and repeatedly affirmed that under § 2254, there is a heightened level of deference a federal habeas court must give to state court decisions. See Dunn v. Madison, No. 17-193, 2017 WL 5076050, at *3 (U.S. Nov. 6, 2017) (per curiam); Kernan v. Cuero, No. 16-1468, 2017 WL 5076049, at *4 (U.S. Nov. 6, 2017) (per curiam); Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017); White v. Wheeler, 136 S. Ct. 456, 461 (2015); Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam). As the Court has explained, on federal habeas review, § 2254 "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam) (quoting Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (internal quotation marks omitted)). With these principles in mind regarding the standard and limited scope of review in federal habeas proceedings, the Court addresses Petitioner's claims.

C. Claims and Analysis

Petitioner raises the following grounds for federal habeas relief: (1) the prosecutor vouched for Merel's credibility, in violation of due process and the Sixth Amendment right to confront witnesses; (2) the prosecutor impugned the integrity of Petitioner's counsel, in violation of due process, the Sixth and Fourteenth Amendment right to present a defense, and the Sixth Amendment right to effective assistance of counsel; and (3) the jury instruction defining voluntary manslaughter was misleading, in violation of due process and the Sixth and Fourteenth Amendment right to present a defense. Each claim is analyzed in turn below.

1. Prosecutor's vouching for Merel's credibility

Petitioner's first claim is that the prosecutor invoked non-evidentiary knowledge or the prestige of his office to personally endorse the credibility of Petitioner's codefendant, Merel. Pet. at 29. Petitioner contends that the prosecutor engaged in improper vouching by (1) making express comments in closing arguments about his belief of Merel's lesser culpability, (2)

---

decision because, as discussed below, the Court of Appeal's stated reasons provide a sufficient basis to deny Petitioner's habeas petition.

conducting a light-handed cross-examination of Merel, and (3) requesting an assault instruction solely for Merel. Id. at 29–30. Two of the prosecutor's statements in closing are central to the California Court of Appeal's decision. First, the prosecutor stated:

> And the way I view this case, you take a look at this man, Michael Magidson, sitting here in this black suit with his tie, and I tell you that man—if you can't see him, you know, I'll move the podium. Take a look at him. When you're looking at him, what you're looking at is a killer. You're looking at narcissistic, self-centered, egotistical, shallow, cold-hearted killer. That's plain and simple. That's way I see him. That's way I see this case.
>
> So understand what I say flows from that. This man here, Jason Cazares, is the killer's brother, and he has always got the killer's back, and he is always there to do what's necessary to look out for his brother, the killer. And you know what that makes him? That makes him a killer. And that's the way I see him. And it's important that you realize this.
>
> And I will tell you—I'll tell you this: I see all—don't see the Defendants all the same way. This man here, Jose Merel, tell you right at the very beginning, I don't see Jose Merel, whatever he is, I don't see him as a killer, and that's a question that you will be asked to determine when it comes to Jose Merel is, whatever he did, when you figure out what he did, you'll have to ask yourselves if what he did, he did in order to help, to assist in some fashion, to facilitate, to encourage, to aid the killers.
>
> That's the decision that you're going to have to make. Make no mistake about it, I see them differently, and understand that is the position that I operate from as an advocate of the professional, and based on my beliefs, and that's where I'm coming from. So as I give the remainder of the comments that I have to give, I think you're entitled to know that.

RT 4863–64. Second, the prosecutor said:

> Now, I can't tell you what [Merel] and his attorney talked about. And really, he can't get up and say this what he and I talked about. It's not evidence, but I think you can infer that [Merel] said things that weren't true out of fear of what the killer would do. So I ask you to consider that.

RT 4889. Petitioner contends that these statements, in combination with the other alleged misconduct, violated his right to due process and his Sixth Amendment right to confront witnesses. Pet. at 30.

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

6

The California Court of Appeal summarized and rejected Petitioner's claim as follows:

> Magidson contends the prosecutor committed "general" vouching when he treated Merel gently in cross-examination, had his parents sit in the front row of the courtroom with an investigator while he testified, sought an assault instruction only against Merel, and made the statements in his closing statement that we have discussed. Although he acknowledges that this "general" vouching may have been ineffective, as shown by the fact that the jury convicted Merel of murder, Magidson argues that he was prejudiced in a more "focused manner" when the prosecutor and Merel's counsel argued that Merel was holding back information about who had strangled Lida. He contends that when the prosecutor told the jury that he could not tell them what Merel and his attorney had talked about, but that the jury could infer that Merel said things that were not true from fear of what Magidson would do, his words "could only have referred to the cross-examination in which Merel was reluctant to say that [Magidson] had admitted to strangling Lida." "Could there be," Magidson asks, "a clearer implication that Jose Merel told [his counsel and the prosecutor] that [Magidson] had said he had strangled Lida?" Magidson argues that the prosecutor's statement implied that he had special knowledge of facts outside the record, and was a "finger on the scale" that persuaded the jury that it was Magidson, and not Nabors, who had strangled Lida.
>
> An examination of the relevant portion of the prosecutor's argument undermines this contention. The context indicates that the challenged statement referred not to whether Magidson had admitted to strangling Lida, but to the question of whether Lida was still alive when Nabors and Cazares went to get the shovels that would be used to bury her. That is, the prosecutor was commenting on the discrepancy between Merel's counsel's opening statement, which indicated that Lida was tied up and taken to the garage after Nabors and Cazares returned, and Merel's testimony at trial, which did not refer to Lida being tied up after Nabors and Cazares's absence. *From that discrepancy*, the prosecutor invited the jury to infer that Merel had been less than forthcoming in his testimony out of fear of what evidence Magidson might later give against him. Nothing in this argument implied that the prosecutor had outside knowledge that Merel had told his attorney Magidson had admitted to strangling Lida.
>
> Nor do the other statements Magidson challenges suggest the prosecutor was basing his arguments on knowledge outside the record. We recognize that the prosecutor was vigorous in his characterization of Magidson and Cazares, and that he made no secret of his position that they were more clearly guilty of first degree murder than was Merel. However, in expressing his position, he did not stray outside the record and inferences the jury could draw from the record, and indeed, he invited the jury to make its *own* decision about Merel's legal culpability based on the evidence and the law.

. . .

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

7

> . . . While the prosecutor argued that it was his view that Magidson and Cazares were killers and should be convicted of first degree murder, he did not indicate that he believed Merel's story and thought him innocent. Indeed, he argued that Merel had testified untruthfully in order to protect Magidson. In the absence of any suggestion that his views were based on information outside the record, we cannot conclude he vouched improperly for Merel's credibility.

Resp. Ex. 6 at 32–33 (bracketed alterations in original) (footnote omitted).

Prosecutorial misconduct is cognizable in federal habeas corpus, but the appropriate standard of review is the narrow one of due process. Darden v. Wainwright, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Id.; see also Smith v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). The operative question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

The Supreme Court has recognized the impropriety of a prosecutor vouching for the credibility of a witness or expressing a personal opinion about the defendant's guilt. United States v. Young, 470 U.S. 1, 18 (1985). Vouching presents two particular concerns: (1) the prosecutor's comments may suggest that evidence not presented to the jury supports the witness's testimony, and (2) the prosecutor's personal assurances may induce the jury to distrust its own view of the evidence by placing the prestige of the government behind the witness. See id. at 18–19 (citing Berger v. United States, 295 U.S. 78, 88–89 (1935)). Courts examine the prosecutor's remarks "within the context of the trial to determine whether the prosecutor's behavior" deprived the defendant of a fair trial. Id. at 12 (citing Lawn v. United States, 355 U.S. 339, 359 n.15 (1958)).

Here, the California Court of Appeal properly considered the challenged statements in context and did not unreasonably apply clearly established federal law in concluding that Petitioner's trial was not rendered fundamentally unfair. Petitioner primarily challenges the two

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

8

statements quoted above made by the prosecutor in closing.

Petitioner contends that the prosecutor's first statement vouched for Merel's credibility by avowing that the prosecutor did not see Merel as a killer. But the Court of Appeal did not unreasonably apply federal law in concluding that the first statement did not implicate the concerns underlying the misconduct of vouching in a way that affected the fairness of the trial. The prosecutor did not invoke the esteem of his office or intimate that the jury should trust his judgment over its own view of the evidence. The prosecutor's statement of his belief in Merel's lesser culpability also contained no suggestion that he was relying on extra-record evidence. Rather, the prosecutor's statement came in a passage where he was summarizing his view of the defendants' culpability based on the facts, and he underscored that he was expressing his view of *the case*. As to Merel, the prosecutor was explicit that the jury would have to "figure out what [Merel] did" and decide whether or not Merel acted "in order to help, to assist in some fashion, to facilitate, to encourage, to aid the killers." The prosecutor further explained that with regard to Merel, the jury should look at the evidence presented in the case and return a verdict that is "just and appropriate" under the law. RT 4890. The fact that the jury found Merel guilty of second degree murder supports the conclusion that the jury properly performed its fact-finding role notwithstanding the prosecutor's statement about his view of Merel's culpability. Thus, the Court of Appeal was not unreasonable in determining that the prosecutor's first statement was not improper because it "did not stray outside the record" and it "invited the jury to make its own decision about Merel's legal culpability based on the evidence and the law." See Lawn, 355 U.S. at 359 n.15 ("The Government's attorney did not say nor insinuate that the statement was based on personal knowledge or on anything other than the testimony of those witnesses given before the jury, and therefore it was not improper.").

Nor was the Court of Appeal's analysis of the prosecutor's second statement unreasonable. Petitioner urges that "[t]he clear implication" of the prosecutor's comment about Merel speaking to his attorney is that "Merel told [his counsel and the prosecutor] that [P]etitioner had said that he

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY
9

had strangled Lida." Pet. at 43. However, the context provides little support for that interpretation because the surrounding remarks did not mention whether Petitioner admitted to strangling Lida. To the contrary, the prosecutor's statement immediately followed his discussion of a conflict between Merel's testimony and Merel's counsel's opening statement about when Lida was tied up and taken to the garage. Hence, the Court of Appeal's reading of the prosecutor's statement as referring not to whether Petitioner admitted to strangling Lida, but to whether Lida was still alive when Cazares and Nabors left to get shovels, is reasonable. Like the prosecutor's first statement about Merel's lesser culpability, the prosecutor's second statement asked the jury to draw an inference based on the record, not on external knowledge about what Merel said to his attorney or the prosecutor. The Court of Appeal therefore did not unreasonably apply clearly established federal law in holding that the prosecutor's second statement did not constitute improper vouching that denied Petitioner a fair trial. See Lawn, 355 U.S. at 359 n.15.

The prosecutor's statements, moreover, must be viewed within the overall context in which they were made. Importantly, the jury was repeatedly informed not to credit attorney statements as evidence: the trial judge so instructed the jury in both the oral and written instructions, see CT 1358, 1360; RT 5169–71, and the point was emphasized by the prosecutor himself throughout his presentations to the jury, see, e.g., RT 4862, 4889–90, 5166. Furthermore, the prosecutor proffered multiple pieces of evidence related to Petitioner's guilt, including testimony by Nabors that Petitioner tied the rope around Lida while she was still alive, testimony by Petitioner that he could not deny that he strangled Lida, and a later-recanted statement by Petitioner to police that he had put the rope around Lida's neck. RT 481–87, 4343–44, 4369. The clarifying instructions and heavy weight of the evidence against Petitioner reinforce the Court of Appeal's conclusion that the prosecutor's statements did not render Petitioner's trial fundamentally unfair. See Darden, 477 U.S. at 182.

Petitioner separately contends that other indirect conduct by the prosecutor counted as or contributed to improper vouching. Not only does Petitioner fail to identify Supreme Court

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

10

precedent holding that the type of conduct at issue here violates the Constitution, see Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) ("[I]t is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] [Supreme] Court."), but it is not unreasonable to conclude that the prosecutor's actions do not amount to improper vouching. For example, the prosecutor had Merel's parents sit in the front row during Merel's cross-examination and began a line of questioning by stating that Merel's parents were good people who told Merel to be honest. RT 3720–21. That reference to Merel's parents plainly did not invoke or imply an out-of-court conversation but instead provided impetus for Merel to tell the truth in court.

Nor does Petitioner establish the specter of government imprimatur or reference to external facts in either the prosecutor's "gentle" cross-examination of Merel or the prosecutor's decision to seek an assault instruction against Merel alone. Additionally, any potential unfairness was diminished in both instances. As to the "gentle" cross-examination, Petitioner's counsel brought to the jury's attention the difference in substance and tone when the prosecutor cross-examined Petitioner and Cazares. See RT 5083 ("And so you would expect, when Jose Merel takes the stand to testify, that he's going to get the kind of treatment that you saw [the prosecutor] give Michael Magidson and Jason Cazares, yelled at them and sneered at them and was sarcastic with them, to show you his displeasure and disbelief in their testimony."). As to the prosecutor's charging decision, courts generally may not second-guess such decisions because prosecutors have broad discretion to choose which charges to bring against defendants. United States v. Armstrong, 517 U.S. 456, 464 (1996). Here, the trial judge specified that in giving the assault instruction, the court was "making no comment on the evidence and making no indication one way or the other as to what [the jury's] verdict should be as to Defendant Merel or any other Defendant" and that the jury should decide the appropriate weight to give each instruction. RT 5198. Thus, the Court of Appeal's conclusion that none of the prosecutor's conduct rose to the level of improper vouching that denied Petitioner a fair trial did not involve an unreasonable application of clearly established

federal law.[4] Petitioner is not entitled to habeas relief on this claim.

2. Prosecutor's impugning Petitioner's counsel

Petitioner's next claim is that the prosecutor improperly impugned the integrity of Petitioner's counsel and implied that Petitioner's counsel believed that Petitioner was guilty. Pet. at 45. The relevant exchange is reproduced below:

> [PROSECUTOR]: If did were not for Nabors leading the cops up there to [Lida's] body in the ground, [Lida's] family would still be wondering what ever happened to [her]. You know, all these missing person's case you see on cable news channel at night, hey, would be have been one of them; matter of these raped guy's right here, did it matter to the killer, who [Petitioner's counsel] for last three years, it's been his privilege and honor to know Michael Magidson and represent him.
>
> When you make a statement like that, you know, it's not evidence. But you're asking the jury to believe you, and let me tell you, that's not true. I don't buy it for a minute. In fact, I'll go so far as to say that's a dishonesty. Because [Petitioner's counsel] is a good man. And I know him well enough to know what his true opinion would be about somebody like a killer.
>
> [PETITIONER'S COUNSEL]: I'm going to object.
>
> [CAZARES'S COUNSEL]: Go off the record.
>
> THE COURT: Personal opinions are irrelevant. Please proceed.
>
> [PROSECUTOR]: See, rest assured, [Petitioner's counsel] doesn't feel that way about the killer. But when he tells you that he does, I don't fault him. He represents the guy. What are you going to do? He is got an obligation; takes it seriously. And I applaud him for that.

RT 5154. According to Petitioner, the prosecutor's comments violated Petitioner's right to due process, his Sixth and Fourteenth Amendment right to present a defense, and his Sixth Amendment right to effective assistance of counsel. Pet. at 45.

The California Court of Appeal rejected Petitioner's claim, explaining:

---

[4] Petitioner neither develops an argument that his Sixth Amendment Confrontation Clause claim should be evaluated differently than his due process claim, nor identifies Supreme Court authority finding a Sixth Amendment Confrontation Clause violation in similar circumstances.

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

12

> We first note that Magidson made an objection to the first portion of the challenged argument, and that the trial court admonished the jury that opinions were not relevant. The prosecutor continued with his line of argument briefly, but Magidson made no further objection. We see no reason to believe a further objection and request for an admonition would not have cured any harm. To the extent the admonition was insufficient to respond to the later portion of the argument, Magidson has waived his claim.
>
> In any case, we see no possibility that Magidson was prejudiced by the argument.[25] The challenged argument was brief, and in context it is clear that it was intended to emphasize not any purported dishonesty on the part of defense counsel, but Magidson's own behavior in taking part in killing Lida and concealing her body. Upon Magidson's objection to the first part of the challenged argument, the court told the jury that opinions were irrelevant. We see no reason to think the jury could have been improperly swayed by it or that it would have reached any other verdict in its absence.
>
> [FN25] Magidson argues that the argument implicated his federal constitutional rights under the Sixth and Fourteenth Amendments, and that we must therefore reverse unless the error is harmless beyond a reasonable doubt. We cannot characterize the prosecutor's brief comments as having "'comprise[d] a pattern of conduct "so egregious that it infect[ed] the trial with such unfairness as to make the conviction a denial of due process."'" In any case, even under the standard for reviewing federal constitutional error, we would reach the same conclusion.

Resp. Ex. 6 at 36–37 (alterations in original) (citations omitted).

As noted above, for claims of prosecutorial misconduct, the proper standard is due process. Darden, 477 U.S. at 181. A defendant's constitutional rights are violated when the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (quoting Donnelly, 416 U.S. at 643). Relevant here, important factors to be considered in making that assessment include whether the prosecutor's comment manipulated or misstated the evidence, whether the judge admonished the jury to disregard the comment, whether the comment was invited by defense counsel, whether the comment was prominent in light of the weight of the evidence and the context of the entire trial, and whether defense counsel had an adequate opportunity to respond. Id. at 181–82.

Here, the California Court of Appeal addressed these factors and did not unreasonably

apply Darden in deciding that the prosecutor's comments about Petitioner's counsel did not deprive Petitioner of a fair trial.[5] First, the prosecutor's comments did not misstate the evidence. As the Court of Appeal noted, when read in context, the comments were meant to reflect on Petitioner's role in the death of Lida, not on the dishonesty of Petitioner's counsel. Second, after Petitioner's counsel objected to the first part of the prosecutor's comments, the court told the jury that personal opinions were irrelevant. Petitioner's counsel did not again object when the prosecutor continued his remarks. Third, the prosecutor framed his comments as a response to the statements by Petitioner's counsel that he had the privilege and honor of representing Petitioner. While it may be preferable to minimize such "invited responses," Young, 470 U.S. at 14, the Court of Appeal could reasonably weigh this factor against a due process violation. Fourth, the prosecutor's comment was brief and noted that attorney statements are not evidence. That point fits within the broader context of the trial, where the jury was regularly reminded by the court and the prosecutor that its verdict must be based on the evidence, not on statements by counsel. See, e.g., CT 1358, 1360; RT 4862, 5166, 5169–70. And, as described more fully above, the jury had significant evidence related to Petitioner's guilt. Finally, although the prosecutor's comments were made in rebuttal leaving no opportunity for Petitioner's counsel to reply, Petitioner's counsel was able to lodge an objection and could have renewed that objection when the prosecutor continued his remarks. However, even if the opportunity to object was insufficient to provide an adequate response, the Court of Appeal could reasonably determine that the prosecutor's comments did not render the trial fundamentally unfair.[6] Because the Court of Appeal's

---

[5] The Court of Appeal also held that Petitioner waived any challenge to the second portion of the prosecutor's argument because he failed to raise a contemporaneous objection, which would not have been futile. Resp. Ex. 6 at 36. Petitioner could overcome this default only by demonstrating cause and prejudice or a fundamental miscarriage of justice, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), neither of which he has attempted to show. Nevertheless, like the Court of Appeal, this Court proceeds to address Petitioner's claim.

[6] Petitioner does not provide distinct arguments as to his Sixth Amendment right to effective assistance of counsel claim or identify Supreme Court authority finding ineffective assistance of counsel in similar circumstances.

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

14

conclusion was not an unreasonable application of Darden, Petitioner is not entitled to habeas relief on this claim.

### 3. Jury instructions defining voluntary manslaughter

Petitioner's last claim is that California Jury Instructions—Criminal ("CALJIC") No. 8.42, which defines voluntary manslaughter and was given to the jury in this case, is incorrect and misleading on the question of provocation. Specifically, he contends that the instruction could be misread to require that the provocation necessary to reduce murder to voluntary manslaughter is that which would cause a reasonable person to kill, rather than that which would cause a reasonable person to act rashly or without deliberation and reflection. Pet. at 49. He argues that this instructional error violated his due process rights because the prosecutor did not have to prove the absence of provocation beyond a reasonable doubt and that the error interfered with his Sixth and Fourteenth Amendment right to present a defense. Id.

The California Court of Appeal rejected Petitioner's claim, concluding that there was no error in the instruction. The court explained that the California Supreme Court "has in at least four cases used the language of CALJIC No. 8.42 or similar language to describe the correct standard for assessing the effect of provocation or heat of passion on the defendant's actions." Resp. Ex. 6 at 18. In light of that precedent, the Court of Appeal concluded that "the trial court instructed the jury correctly on the law" and that there was no need to consider prejudice because there was no error. Id. at 21.

Although instructional errors are cognizable in federal habeas corpus, they "generally may not form the basis for federal habeas relief." Gilmore v. Taylor, 508 U.S. 333, 344 (1993). It is not enough that the instruction was incorrect as a matter of state law. Estelle v. McGuire, 502 U.S. 62, 71–72 (1991). Habeas relief is available if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Boyde v. California,

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

15

494 U.S. 370, 378 (1990) (quoting Cupp, 414 U.S. at 146–47). Where the charge as a whole is ambiguous, the question is whether there is a "reasonable likelihood" that the jury misapplied the instruction in a way that violated the defendant's constitutional rights. Estelle, 502 U.S. at 72 (quoting Boyde, 494 U.S. at 380).

The California Court of Appeal did not unreasonably apply federal law when it concluded that the jury was not misled because the instruction correctly reflects California law on voluntary manslaughter. In particular, the instruction's language belies Petitioner's assertion that the instruction could be misinterpreted to measure provocation by whether an ordinarily reasonable person would have been induced to kill. The instruction focuses not on whether the provocation would cause the ordinarily reasonable person to kill, but on whether the provocation "would cause the ordinarily reasonable person . . . to [act] rashly, and without deliberation and reflection, and from passion rather than judgment." RT 5194. As the Court of Appeal observed, that formulation is drawn from CALJIC No. 8.42 and closely mirrors the description of the standard from multiple California Supreme Court cases. See, e.g., People v. Manriquez, 123 P.3d 614, 640 (Cal. 2005) ("would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment"); People v. Lee, 971 P.2d 1001, 1007 (Cal. 1999) (same); People v. Barton, 906 P.2d 531, 540 (Cal. 1995) (same). In his traverse, Petitioner concedes that the instruction accurately stated the law. Traverse at 11 (citing People v. Beltran, 301 P.3d 1120, 1125 (Cal. 2013)).

With no identified error in the instruction, it was not unreasonable to conclude that the jury was not misled. Petitioner does not point to language in other instructions that casts ambiguity on the voluntary manslaughter instruction. And while Petitioner contends that certain statements in the prosecutor's closing argument conveyed the wrong legal standard to the jury, it is established that "arguments of counsel generally carry less weight with a jury than do instructions from the court." Boyde, 494 U.S. at 384. Therefore, the Court of Appeal could reasonably conclude that the facts here do not overcome the presumption that the jury followed its instructions. See Weeks

1  v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.");

2  Richardson v. Marsh, 481 U.S. 200, 211 (1987) (same). That determination appears particularly

3  reasonable in light of the fact that Petitioner's counsel did not object to the prosecutor's closing on

4  these grounds and that Petitioner's counsel presented the defense's theory of the case in his

5  closing argument. Petitioner has not cited Supreme Court authority finding a constitutional

6  violation in similar circumstances. Thus, Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus is **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

SO ORDERED.

Dated: December 6, 2017

EDWARD J. DAVILA
United States District Judge

Case No.: 10-CV-05118-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

17